ALICE O'BRIEN (CA #180208)
JASON WALTA, *pro hac vice*
ERIC A. HARRINGTON (CA # 257178)
DERRICK R. WARD, *pro hac vice*
National Education Association
1201 16th Street NW
Washington, DC 20036-3290
Telephone:  202.822.7018
Facsimile: 202.822.7033
eharrington@nea.org

Counsel for Defendants National Education Association; California Teachers Association; United Teachers Los Angeles; United Teachers of Richmond CTA/NEA

*additional counsel listed on signature pages*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| APRIL BAIN; BHAVINI BHAKTA; KIECHELLE RUSSELL; CLARE SOBETSKI,<br>            Plaintiffs,<br><br>                    vs.<br><br>CALIFORNIA TEACHERS ASSOCIATION; NATIONAL EDUCATION ASSOCIATION; CALIFORNIA FEDERATION OF TEACHERS; AMERICAN FEDERATION OF TEACHERS; UNITED TEACHERS LOS ANGELES; UNITED TEACHERS OF RICHMOND CTA/NEA; RAMON CORTINES, in his capacity as Superintendent of Los Angeles Unified School District; BRUCE HARTER, in his capacity as Superintendent of West Contra Costa | Case No. 2:15-cv-02465-SVW-AJW<br><br>**UNION DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE UNDER FED. R. CIV. P. 12(b)(6) FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:  Hon. Steven V. Wilson<br>Date: June 22, 2015<br>Time: 1:30 pm<br>Courtroom:  6<br><br>[Proposed] Order Filed Concurrently Herewith |

1   Unified School District; DAVID
2   VANNASDALL, in his capacity as
    Superintendent of Arcadia Unified School
3   District,
              Defendants.
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on June 22, 2015, at 1:30 pm, or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Stephen V. Wilson, United States District Court Judge, Courtroom 6, 2nd Floor, Los Angeles Spring Street Courthouse, 312 North Spring Street, Los Angeles, California, 90012, Union Defendants California Teachers Association, National Education Association, California Federation of Teachers, American Federation of Teachers, United Teachers Los Angeles, and United Teachers of Richmond CTA/NEA ("Union Defendants") will move for an order dismissing Plaintiffs' complaint with prejudice.

This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiffs' Complaint fails to state a claim for which relief can be granted against the Union Defendants.

This motion is based on this Notice of Motion, Motion to Dismiss, the accompanying Memorandum and Points of Authorities, all papers and records on file in this action, and such further argument as the Court may hear at the time of the hearing on this motion.

Counsel for the Union Defendants conferred with Plaintiffs' counsel on May 12, 2015, pursuant to Local Rule 7-3, but were unable to reach an agreement that would obviate the need for this motion.


Dated: May 20, 2015                 Respectfully Submitted,
ALICE O'BRIEN
JASON WALTA
ERIC A. HARRINGTON
DERRICK R. WARD
National Education Association

                                     /s/Eric A. Harrington

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................ii

INTRODUCTION ............................................................................1

BACKGROUND .............................................................................2

ARGUMENT

   I.  The Complaint fails to state a First Amendment claim. ...............................5

      A. The Unions are not state actors. ..............................................8

      B. Plaintiffs have no First Amendment right to remain members of the
         Unions while refusing to pay full dues....................................18

   II.  Relief Plaintiffs seek would violate the Unions' First Amendment rights...22

      A. The Unions have a First Amendment right to determine membership
         rights and responsibilities, and how Union officers are elected. .............23

      B. The Unions have a First Amendment right to engage in political
         expressive activity. ....................................................24

CONCLUSION............................................................................25

# TABLE OF AUTHORITIES

## CASES

*Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977).........................................3, 13, 16

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999).......................................9, 11

*Anderson v. Cal. Faculty Ass'n*, 25 Cal. App. 4th 207 (1994) ....................................2

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).............................................................5, 9, 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..................................................5

*Besig v. Dolphin Boating & Swimming Club*, 683 F.2d 1271 (9th Cir. 1982)...........22

*Blum v. Yaretsky*, 457 U.S. 991 (1982)..............................................................9, 10

*Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000)......................................................25

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
 531 U.S. 288 (2001)...............................................................................................12

*Bureau of Alcohol, Tobacco & Firearms v. Fed. Labor Relations Auth.*,
 464 U.S. 89 (1983)..................................................................................................17

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*,
 590 F.3d 806 (9th Cir. 2010)..........................................................................9, 10, 11

*Chi. Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292 (1986).......................3, 11

*Citizens United v. FEC*, 558 U.S. 310 (2010) ...........................................22, 24, 25

*Collins v. Womancare*, 878 F.2d 1145 (9th Cir. 1989) ...........................................10

*Conn v. Nat'l Can Corp.*, 124 Cal. App. 3d 630 (1981) ...........................................17

*CWA v. Beck*, 487 U.S. 735 (1988)........................................................................3

*Dashiell v. Montgomery County*, 731 F. Supp. 1251 (D. Md. 1990),
 *aff'd*, 925 F.2d 750 (4th Cir. 1991)........................................................................3

*Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177 (2007) ......................................11, 24

*Dennis v. Sparks*, 449 U.S. 24 (1980)..............................................................10, 11

*Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892 (9th Cir. 2008) .............................9

*Earl v. Sheriff's Ass'n*, No. 10-0696, 2010 WL 4955328
 (S.D. Tex. Nov. 29, 2010) .....................................................................................14

*Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614 (1991) ...............................8

*Farrell v. Firefighters Local 55*, 781 F. Supp. 647 (N.D. Cal. 1992) ...............6, 7, 20

*Gordon v. State Bar of Cal.*, 369 F. App'x 833 (9th Cir. 2010) ...........................21, 22

*Hallinan v. Chi. FOP Lodge No. 7*, 570 F.3d 811 (7th Cir. 2009).................13, 14, 15

*Harik v. Cal. Teachers Ass'n*, 326 F.3d 1042 (9th Cir. 2003) ....................................18

*Hovan v. United Bhd. of Carpenters*, 704 F.2d 641 (1st Cir. 1983)......................9, 15

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*, 515 U.S. 557 (1995)..................8

*Int'l Ass'n of Machinists v. Street*, 367 U.S. 740 (1961)............................................24

*Jackson v. Metro. Edison Co.*, 419 U.S. 345 (1974) ................................8, 11, 12, 15

*Jensen v. Lane County*, 222 F.3d 570 (9th Cir. 2000) ................................................12

*Kidwell v. Transp. Commc'ns Int'l Union*, 946 F.2d 283 (4th Cir. 1991) ..........*passim*

*Kirtley v. Rainey*, 326 F.3d 1088 (9th Cir. 2003) ......................................................10

*Knox v. Serv. Employees Int'l Union, Local 1000*, 132 S. Ct. 2277 (2012) ..............24

*L.A. Council of Sch. Nurses v. L.A. Unified Sch. Dist.*,
    113 Cal. App. 3d 666 (1980) ...............................................................................22

*Labov v. Lalley*, 809 F.2d 220 (3d Cir. 1987)............................................................23

*Laredo FOP Lodge 911 v. City of Laredo*, No. 04-134,
    2005 WL 1189839 (S.D. Tex. Apr. 29, 2005).....................................................14

*Liegmann v. Caifornia Teachers Association*,
    395 F. Supp. 2d 922 (N.D. Cal. 2005)...............................................................7, 20

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) ...................................................16

*Lutz v. Int'l Ass'n of Machinists*, 121 F. Supp. 2d 498 (E.D. Va. 2000)....................11

*Masters v. Screen Actors Guild*, No. 04-2102 SVW,
    2004 WL 3203950 (C.D. Cal. Dec. 8, 2004).................................................*passim*

*McConnell v. FEC*, 540 U.S. 93 (2003), *overruled on other grounds*,
    558 U.S. 310 (2010)............................................................................................ 25

*Mendia v. Garcia*, 768 F.3d 1009 (9th Cir. 2014).....................................................25

*Messman v. Helmke*, 133 F.3d 1042 (7th Cir. 1998) ....................................12, 13, 14

*Minn. State Bd. for Cmty. Coll. v. Knight*, 465 U.S. 271 (1984)...................18, 20, 21

*Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984 (9th Cir. 2013) ....................................10

*NCAA v. Tarkanian*, 488 U.S. 179 (1988)...................................................................8

*NLRB v. Elec. Workers Local 340*, 481 U.S. 573 (1987) .............................................6

*NLRB v. Machinists Local 1327*, 608 F.2d 1219 (9th Cir. 1979) ...............................21

*N.Y. 10-13 Ass'n, Inc. v. City of N.Y.*, No. 98-1425,
     2000 WL 1376101 (S.D.N.Y. Sept. 22, 2000), *aff'd*,
     36 F. App'x 8 (2d Cir. 2002)....................................................................14

*Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480 (9th Cir. 1995) ........................11

*Pattern Makers v. NLRB*, 473 U.S. 95 (1985) ...................................................19, 20

*Pennsylvania v. New Jersey*, 426 U.S. 660 (1976) ...............................................25

*Perry v. Metro. Suburban Bus. Auth.*, 390 F. Supp. 2d 251 (E.D.N.Y. 2005) ...........17

*Petro-Chem Processing, Inc. v. EPA*, 866 F.2d 433 (D.C. Cir. 1989) ......................25

*Price v. Hawaii*, 939 F.2d 702 (9th Cir. 1991) ......................................................9

*Republican Party of State of Conn. v. Tashjian*, 770 F.2d 265 (2d Cir. 1985),
     *aff'd*, 479 U.S. 208 (1986)...............................................................................24

*Roberts v. United States Jaycees*, 468 U.S. 609 (1984) ........................................23

*Ry. Employees' Dep't v. Hanson*, 351 U.S. 225 (1956) .........................................13

*S.F. County Democratic Cent. Comm. v. Eu*, 826 F.2d 814
     (9th Cir. 1987), *aff'd*, 489 U.S. 214 (1989)...............................................22, 23

*Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370 (6th Cir. 1987)..........14

*Steelworkers v. Sadlowski*, 457 U.S. 102 (1982) ..................................................12

*Stevens v. Jefferson*, 421 F. App'x 639 (7th Cir. 2011) ..........................................14

*Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826 (9th Cir. 1999) .............9, 10

*Teamsters Local 186 v. Brock*, 812 F.2d 1235 (9th Cir. 1987) ...........................23, 24

*Warth v. Seldin*, 422 U.S. 490 (1975).................................................................25

*White v. Commc'ns Workers Local 1300*, 370 F.3d 346 (3d Cir. 2004)....................15

## STATUTES, RULES AND REGULATIONS

29 U.S.C. § 411.................................................................................................23

29 U.S.C. § 481(a) ..........................................................................................4, 5

42 U.S.C. § 1983 .........................................................................................15, 16

Cal. Gov't Code § 3541.5............................................................................2, 16, 22

Cal. Gov't Code § 3543(a) ..................................................................................2, 3

Cal. Gov't Code § 3543.1 ...................................................................2, 23

Cal. Gov't Code § 3543.2(a) .............................................................2, 16

Cal. Gov't Code § 3543.6 ..........................................................................2

Cal. Gov't Code § 3544.1 ..........................................................................2

Cal. Gov't Code § 3544.7 ..........................................................................2

Cal. Gov't Code § 3544.9 ..........................................................................2

Cal. Gov't Code § 3546 .............................................................................2

Cal. Gov't Code § 3546(a) ..................................................................2, 3

29 C.F.R. § 452.22 ....................................................................................5

## OTHER AUTHORITIES

Frederick T. Golder & David R. Golder, LABOR & EMPLOYMENT LAW:
    COMPLIANCE & LITIGATION (3d ed.) ........................................................7

48 AM. JUR. 2D LABOR & LABOR RELATIONS (2015)......................................7

## INTRODUCTION

Plaintiffs assert a First Amendment right to be full-fledged members of the Defendant Unions—and to enjoy all of the attendant rights, benefits, and privileges of membership—without paying full membership dues. They contend that because they disagree with some unspecified Union political or ideological activities, the First Amendment grants them the right to be full members while paying only the amount of dues that covers the Unions' expenditures that are germane to collective bargaining. This claim is not novel. Several federal courts have considered it, and all have rejected it—including this Court in *Masters v. Screen Actors Guild*, No. 04-2102 SVW, 2004 WL 3203950 (C.D. Cal. Dec. 8, 2004). These courts agree: there is no First Amendment right to obtain Union-membership rights and benefits for free or on an *à la carte* basis.

If Plaintiffs wish to remain Union members and retain Union members-only benefits they must do what all Union members must do: comply with membership requirements and accept that decisions about membership benefits, voting rights, and expressive political activities will be made pursuant to the Unions' internal democratic rules. This is how expressive associations work. An association's activities are not subject to a dissenter's veto.

To be sure, Plaintiffs have a right to be free from the government compelling them to pay for expressive political activities with which they disagree. But this right is not implicated here because the State does not compel Plaintiffs' Union membership. California's agency-fee system, in fact, ensures that objectors are not compelled to fund expressive political activity. Plaintiffs instead complain only about internal Union decisions, which implicate only private, and not state, action.

Indeed, the relief Plaintiffs seek would itself violate *the Unions*' First Amendment rights to associate to engage in expressive activity. It would constitute an improper form of forced association and would require this Court to re-write the Unions' internal rules and decide which expressive activities are subject to a

1    dissenter's veto. And such actions by this Court—and not the conduct of which

2    Plaintiffs complain—would violate the First Amendment.

3                                    **BACKGROUND**

4          1. Under California law, when a majority of public employees in an

5    appropriate bargaining unit choose to be represented by a labor union for collective

6    bargaining purposes, that union is deemed the "exclusive representative" of all the

7    employees in the bargaining unit. Cal. Gov't Code §§ 3543.1, 3544.1, 3544.7.

8    School districts and the union then engage in collective bargaining, but such

9    bargaining is "limited to matters relating to wages, hours of employment, and other

10   terms and conditions of employment." *Id.* § 3543.2(a).

11         With the exclusive-representative designation comes duties not just to union

12   members, but also to individuals who, for whatever reason, decline to become

13   members. A union so designated has a state-law duty to fairly represent all the

14   employees in the bargaining unit—regardless of whether they are members—and

15   may not discriminate against non-members. *Id.* §§ 3543.6, 3544.9. This duty applies

16   to the collective bargaining process itself, to the administration of the collective

17   bargaining agreement, and to enforcement of the agreement. *See, e.g.*, *Anderson v.*

18   *Cal. Faculty Ass'n*, 25 Cal. App. 4th 207, 219–20 (1994). Bargaining unit employees

19   who claim a union has breached this duty may challenge the union's conduct, but the

20   California Public Employment Relations Board ("PERB") has exclusive jurisdiction

21   over such challenges. Cal. Gov't Code § 3541.5.

22         Because unions owe these duties to members and non-members alike, and

23   these duties are costly, California law permits unions to charge a "fair share service

24   fee" to employees who decline union membership. *Id.* §§ 3543(a), 3546. As a result,

25   public employees who are represented by a labor union are generally required as a

26   condition of public employment to pay the fair share services fee, or in lieu of that,

27   join the union. *Id.* § 3546(a). Public employees, however, are not compelled to

28   become union members; they are always free to pay only the fair-share services fee.

*Id.* § 3543(a). But if they choose to become voluntary union members, their union dues cover collective bargaining costs (so-called chargeable fees) plus the activities of the union that are not germane to collective bargaining (so-called non-chargeable fees). *Id.* Fair-share feepayers may be rebated the non-chargeable fees, *id.* § 3546(a), which includes the costs of members-only benefits, *see, e.g.*, *Dashiell v. Montgomery County*, 731 F. Supp. 1251, 1260 (D. Md. 1990), *aff'd*, 925 F.2d 750 (4th Cir. 1991).

Plaintiffs do not challenge that non-members can constitutionally be required to pay the fair-share fee. *See* Dkt. 1, Compl. at 3 n.1 ("Plaintiffs do not object to paying the chargeable portion of dues as a condition of union membership."). Nor could they: the Supreme Court has held that requiring non-members to pay the fair-share costs the union incurs in fulfilling its duty of fair representation is constitutional. *See, e.g.*, *Chicago Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292, 306–07 (1986); *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 224 (1977).

Indeed, this bifurcated system—fair-share fees for those who object to a union's expressive activity and voluntary union membership for those who wish to voluntarily join the union—was specifically designed by the Supreme Court to protect both objecting employees' and unions' First Amendment rights. *See, e.g.*, *Masters*, 2004 WL 3203950, at *5 n.6 ("Under [*CWA v. Beck*, 487 U.S. 735 (1988)], and its progeny, a union is entitled to collect from non-members a fee that covers only the representational activities of the union. . . .  However, a union is entitled to require, as a condition of membership, that members pay a fee that covers the costs of both the union's non-representational and representational activities.").

2. Four school employees bring suit here, contending that the First Amendment grants a right to "remain union members" and thereby secure all the union-membership rights, privileges, and benefits, without paying full membership dues. Compl. ¶ 8. They contend that the First Amendment requires that they be allowed to "retain the employment-related benefits and voting rights that come with

union membership," but "opt out of funding the unions' political and ideological activities" by paying only for the chargeable fees. *Id.* ¶ 14.

They name several labor unions as Defendants (collectively "Unions"): two local unions that serve as exclusive bargaining representatives (United Teachers of Richmond CTA/NEA and United Teachers Los Angeles), *id.* ¶¶ 29, 30, and the four state and national unions with which those local unions are affiliated (the California Teachers Association ("CTA") and the California Federation of Teachers, and the National Education Association ("NEA") and the American Federation of Teachers ("AFT")), *id.* ¶¶ 25–28. Plaintiffs also name as Defendants three superintendents who "process all deductions from Plaintiffs' paychecks, including deductions for union dues" *id.* ¶¶ 31–34, but who have absolutely no say in the Unions' voting rules or membership benefits.

Despite the well-established scheme that allows teachers to avoid subsidizing the Unions' political activities by becoming agency feepayers, Plaintiffs contend that the First Amendment entitles them to full Union membership at the objecting feepayers' reduced rate. This is so, they maintain, because the union-membership benefits are so desirable that they "effectively compel[]" them to join the Unions despite the fact that the Unions engage in political or ideological activity to which they object. *Id.* ¶ 13. The desired benefits include, among other things, member voting rights, insurance benefits, legal representation, and disaster relief. *Id.* ¶¶ 42–49.

The Unions determine membership rights and privileges pursuant to their internal union rules and democratic procedures, and the Unions, and not public employers, fund the member benefits. *See*, *e.g.*, *id.* Ex. L (UTLA Constitution). And, with respect to NEA and AFT, federal law prescribes that their leaders be elected only by members or delegates chosen by members. *See* 29 U.S.C. § 481(a) (providing that national union officers must be elected by members in good

1  standing); 29 C.F.R. § 452.22 (officers elected by convention, delegates "must be

2  elected by secret ballot among the members in good standing").

3      3. Plaintiffs ask this Court to re-write the Unions' internal governance rules,

4  which limit membership rights to full Union members; enjoin the Unions from

5  denying membership to those unwilling to support the Unions' expressive political

6  activities or even pay full dues; and declare "California's union shop laws"

7  unconstitutional insofar as they allow the Unions' internal rules. Compl., at p. 22.

8                              **ARGUMENT**

9      "To survive a motion to dismiss, a complaint must contain sufficient factual

10  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

11  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

12  U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads

13  factual content that allows the court to draw the reasonable inference that the

14  defendant is liable for the misconduct alleged." *Id*. Although a court must accept as

15  true all well-pleaded factual allegations contained in a complaint, it need not credit

16  legal conclusions or "[t]hreadbare recitals of the elements of a cause of action,

17  supported by mere conclusory statements." *Id*. Federal Rule of Civil Procedure 8

18  "does not unlock the doors of discovery for a plaintiff armed with nothing more than

19  conclusions." *Id*. at 678–79. Determining whether a complaint states a plausible

20  claim for relief is "a context-specific task that requires the reviewing court to draw

21  on its judicial experience and common sense." *Id*. at 679.

22  **I. The Complaint fails to state a First Amendment claim.**

23      Plaintiffs' claims are not novel. Repeatedly, courts have considered claims that

24  the First Amendment includes a right to full-fledged union membership without

25  having to pay full dues. But every federal court—including this Court—has rejected

26  such claims:

27      [A] union is entitled to require, as a condition of membership, that

28      members pay a fee that covers the costs of both the union's non-

representational and representational activities. . . . Thus, [a union] is violating no one's rights when it requires, as a condition of membership, that members pay a fee that covers its non-representational activities.

*Masters*, 2004 WL 3203950, at *5; *see also Kidwell v. Transp. Commc'ns Int'l Union*, 946 F.2d 283 (4th Cir. 1991) (holding that it is constitutional for a union to offer the choice of either full union membership at full union dues or nonmembership at the feepayer cost). As the Supreme Court explained in a related context, "[I]t is simply unfair to require unions to accept members who receive all of the benefits of the association and bear none of the obligations." *NLRB v. Elec. Workers Local 340*, 481 U.S. 573, 593 (1987).

In *Masters*, this Court rejected a non-member's First Amendment challenge to a union rule and practice that required that "as a condition of membership that members pay a fee that covers both [the union's] representational activities and its non-representational activities," holding that no First Amendment claim lay because the union is not a state actor, and that the rules violated no First Amendment rights. 2004 WL 3203950, at **5, 13.

In *Kidwell*, the Fourth Circuit directly addressed whether a member of a union in an agency shop has a First Amendment right to pay less than full dues when the member objects to the use of dues for expressive political activity. That court also concluded that the union was not a state actor and even if it were, the First Amendment contains no such right, and that such an objection right would infringe upon the union's First Amendment associational rights. *Kidwell*, 946 F.2d at 297.

This conclusion applies with equal force to public-employee unions. In *Farrell v. Firefighters Local 55*, a group of firefighters sought to enjoin the use of their union dues for litigation that they found ideologically offensive. 781 F. Supp. 647, 649 (N.D. Cal. 1992). There, as here, the "Plaintiffs assert that the choice between union membership and agency fee is a choice between financing an ideologically

1  offensive cause and losing certain benefits of union membership such as voting
2  privileges," and that choice violates the First Amendment. *Id.* But the *Farrell* court
3  rejected the plaintiffs' assertion:

4      Essentially plaintiffs assert a First Amendment right to participate in
5      the union without financing causes with which they disagree.
6      Plaintiffs do not have that right. Indeed, the union's First Amendment
7      right to associate appears to outweigh any rights plaintiffs have to
8      membership. If plaintiffs wish to participate in every aspect of union
9      decision-making, they must join the union and accept the will of the
10     majority. *Id.*

11     In *Liegmann v. Caifornia Teachers Association*, CTA members challenged a
12 dues increase and sought a temporary restraining order, arguing that the additional
13 funds that were to be used for expressive political activity violated the First
14 Amendment. 395 F. Supp. 2d 922, 928 (N.D. Cal. 2005). But the *Liegmann* court
15 concluded that their First Amendment claim was unlikely to succeed on the merits
16 because "union members objecting to the use of their member fees for political
17 purposes retain the right to be non-members" and members lack "the right to veto the
18 use of their dues to finance any particular expenditure." *Id.*

19     Indeed, the rule that unions may constitutionally require members to pay full
20 dues is so well established that it can be characterized as black-letter law. *See*
21 Frederick T. Golder & David R. Golder, LABOR & EMPLOYMENT LAW: COMPLIANCE
22 & LITIGATION § 2:25:50 (3d ed. 2012) ("An employee who joins a union voluntarily
23 has no constitutional right to refuse to pay costs of union activities that are unrelated
24 to collective bargaining."); 48 AM. JUR. 2D LABOR & LABOR RELATIONS § 89 (2015)
25 ("The right to object to a union's political expenditures is intended to benefit only
26 nonmembers.").

27     Plaintiffs' claims therefore fail as a matter of law on three separate and
28 independent grounds: (1) the First Amendment does not apply to internal union

1 │ decisions about union-membership privileges and benefits because those decisions

2 │ are the product of private, not state, action; (2) even if Union rules could be

3 │ considered state action, Plaintiffs have no First Amendment right to participate *à la*

4 │ *carte* in their Unions simply because they disagree with the Unions' expressive or

5 │ policy positions; and (3) judicially compelling the Unions to accept members who

6 │ refuse to support the Unions' expressive activities would violate the Unions' First

7 │ Amendment rights.

8 │ **A. The Unions are not state actors.**

9 │ 1. "[T]he guarantees of free speech and equal protection guard only against

10 │ encroachment by the government and erec[t] no shield against merely private

11 │ conduct." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*, 515 U.S. 557, 566

12 │ (1995) (citations, brackets, and quotations marks omitted). Thus, "[t]o raise a First

13 │ Amendment claim against a private entity, a plaintiff must show state action on the

14 │ part of the private entity." *Masters*, 2004 WL 3203950, at *12 (citing *Jackson v.*

15 │ *Metro. Edison Co.*, 419 U.S. 345, 358–59 (1974)). But "[l]abor unions generally are

16 │ not state actors and this case is no exception." *Id.* at *13 (citation and quotations

17 │ marks omitted).

18 │ State action is no idle requirement. It "preserves an area of individual

19 │ freedom" and permits "citizens to structure their private relations as they choose

20 │ subject only to the constraints of statutory or decisional law." *Edmonson v. Leesville*

21 │ *Concrete Co., Inc.*, 500 U.S. 614, 619 (1991). And it promotes important federalism

22 │ values by "avoid[ing] the imposition of responsibility on a State for conduct it could

23 │ not control." *NCAA v. Tarkanian*, 488 U.S. 179, 191 (1988).

24 │ If Plaintiffs' challenge were countenanced here, myriad internal union

25 │ decisions would be constitutionalized; but that is decidedly not the law. *See, e.g.*,

26 │ *Kidwell*, 946 F.2d at 298 (unions are free to structure their organizations however

27 │ they see fit, to engage in expressive political activity such as "support[ing] . . . a

28 │ local political candidate," and to make all of the union's internal decisions down to

1  "the design for the union's softball team uniforms"). In considering a constitutional
2  challenge to an internal union rule, then-Judge Stephen Breyer wrote that "to hold
3  union action to be governmental action here would radically change not only the
4  legal, but the practical, nature of the union enterprise." *Hovan v. United Bhd. of*
5  *Carpenters*, 704 F.2d 641, 643 (1st Cir. 1983).

6       When a constitutional claim is brought against a private party, courts must
7  "presum[e] that private conduct does not constitute governmental action." *Sutton v.*
8  *Providence St. Joseph Med. Ctr.,* 192 F.3d 826, 835 (9th Cir. 1999). "[P]rivate
9  parties are not generally acting under color of state law," and "conclusionary
10 allegations [of state action], unsupported by facts, will be rejected as insufficient."
11 *Price v. Hawaii*, 939 F.2d 702, 707–08 (9th Cir. 1991) (citation, quotation marks,
12 and brackets omitted); *see also Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892,
13 900 (9th Cir. 2008) (same). Thus, Plaintiffs' unsupported allegations that various
14 actions were taken under "color of law," *see* Compl., ¶¶ 4, 16, 49, 55, 56 & 78, are
15 but "bare assertions" and "formulaic recitation[s] of the elements . . . of a
16 constitutional . . . claim" that carry no weight. *See Iqbal*, 556 U.S. at 681.

17      The state-action "inquiry 'begins by identifying the specific conduct of which
18 the plaintiff complains.'" *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d
19 806, 812 (9th Cir. 2010) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40,
20 51 (1999)). "It is important to identify the function at issue because an entity may be
21 a State actor for some purposes but not for others." *Id.* at 812–13. "Faithful
22 adherence to the 'state action' requirement . . . requires careful attention to the
23 gravamen of the plaintiff's complaint." *Blum v. Yaretsky*, 457 U.S. 991, 1003 (1982).

24      2. To determine whether private actions can be considered state actions for
25 constitutional purposes, courts consider various tests: (a) the public function test,
26 which asks whether the private entity performs a task or exercises powers
27 traditionally reserved to the government; (b) the joint action test, which asks whether
28 the government affirms, authorizes, encourages, or facilitates unconstitutional

1   conduct through its involvement with a private party; (c) the state compulsion test,

2   which asks whether the challenged conduct was compelled by state regulation or

3   policy; and (d) the governmental nexus test, which asks whether a sufficiently close

4   nexus exists between the state and the private actor so that the private action may be

5   fairly treated as that of the State itself. *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984,

6   995 (9th Cir. 2013); *Kirtley v. Rainey*, 326 F.3d 1088, 1092–95 (9th Cir. 2003).

7   Under all these tests, the "ultimate issue" is whether the alleged constitutional

8   violation is "fairly attributable" to the government. *Sutton*, 192 F.3d at 835.

9   "Consistent with this approach, constitutional standards are invoked only when it can

10  be said that the State is *responsible* for the specific conduct of which the plaintiff

11  complains." *Naoko Ohno*, 723 F.3d at 994 (emphasis in original and citation and

12  quotation marks omitted). Thus, so long as the State does not compel the challenged

13  union conduct, provide encouragement for it, or become entangled in it, the unions'

14  conduct cannot be deemed the State's. *See Blum*, 457 U.S. at 1004.

15  Here, the *specific conduct* that Plaintiffs challenge is the application of the

16  Unions' rules requiring full membership dues as a condition of receiving members-

17  only benefits and union voting rights. *See, e.g.*, Compl. ¶¶ 3, 20, 21, 22, 23, 24, 49 &

18  p.22 (prayer for relief). Thus the question is whether this specific conduct is state

19  action. *See Caviness*, 590 F.3d at 812–13. It is not.

20  a. The Unions are not state actors under the public-function test: in

21  determining membership rules and benefits, the Unions are obviously "not

22  performing a function traditionally and exclusively reserved for the States," *Masters*,

23  2004 WL 3203950, at *13, and the Complaint does not allege otherwise.

24  b. The Unions are not state actors under the joint action test. This test

25  "requires a substantial degree of cooperative action" between the State and the

26  private entity. *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989). Indeed,

27  the Supreme Court has held that a union is not a state actor unless it is a "willful

28  participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24,

27 (1980). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Sullivan*, 526 U.S. at 52. Here, there is no allegation—nor could there be—that in setting its membership terms the Unions willfully participate in a joint action with the State or the Defendant superintendents. Neither the State nor the superintendents are involved in determining the Unions' internal rules and benefits, and Plaintiffs do not, and could not, allege otherwise.

c. The challenged Union rules are not "compelled" by "state regulation or policy" as is required under the state compulsion test. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995). No "state regulation or policy" "compel[s]" the Unions' privately determined choices to require full dues as a condition of membership, to offer attractive members-only benefits, or to expend voluntary dues on political or ideological causes. *See Jackson*, 419 U.S. at 357 ("[W]here the [state] has not put its own weight on the side of the proposed practice by ordering it," there is no "state action.").

To be sure, the fair-share requirement that non-members pay agency fees involves state action. *See Hudson*, 475 U.S. at 301. There, the state compels the employee to pay the fair-share fee as a condition of public employment. *See, e.g.*, *Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 190 (2007) (characterizing public-sector agency fees as "state-compelled"). But a private actor "may be a State actor for some purposes but not for others." *Caviness*, 590 F.3d at 812–13. And, state action has been held to exist "*only* where the union procedure in issue derives from the statutory grant of power to the union to compel non-members to contribute fees subject to the non-members right to object to the fee charge." *Lutz v. Int'l Ass'n of Machinists*, 121 F. Supp. 2d 498, 505–06 (E.D. Va. 2000) (emphasis added).

Plaintiffs do not challenge governmentally compelled conditions; they challenge the Unions' own internal membership conditions. *See, e.g.*, Compl. ¶¶ 41–54. But these internal conditions are not state actions. So, for example, the Supreme Court has concluded that a union's "outsider rule" prohibiting candidates for union

1    office from accepting contributions from non-members cannot "interfere[] with

2    members' and nonmembers' constitutional rights of free speech and free association"

3    because "the union's decision to adopt an outsider rule does not involve state

4    action." *Steelworkers v. Sadlowski*, 457 U.S. 102, 121 n.16 (1982). And any attempt

5    to conflate the agency fee requirement (which is compelled by the State), with the

6    Unions' rules for voluntary membership (which are not so compelled) should be

7    rejected. "[E]nforcement of union rules is not state action, so unless [the State or the

8    school districts] participate[] in the enforcement (for instance, by making union

9    membership a job requirement), harm resulting from union expulsion would not be

10   cognizable in § 1983." *Messman v. Helmke*, 133 F.3d 1042, 1047–48 (7th Cir. 1998).

11        d. Finally, the challenged union membership rules are not state actions under

12   the governmental nexus test, which asks whether "a sufficiently close nexus [exists]

13   between the state and the private actor 'so that the action of the latter may be fairly

14   treated as that of the State itself.'" *Jensen v. Lane County,* 222 F.3d 570, 575 (9th

15   Cir. 2000) (quoting *Jackson,* 419 U.S. at 350). This test requires a showing of

16   "pervasive entwinement to the point of largely overlapping identity." *Brentwood

17   Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 303 (2001). The

18   identities of the Unions and state officials do not overlap, and the Complaint does not

19   allege otherwise.

20        3. That the Unions are not state actors is reinforced by a long line of cases

21   rejecting constitutional challenges against unions—including public-employee

22   unions—on state-action grounds. In *Masters*, this Court rejected the plaintiff's First

23   Amendment challenge, because, among other things, the union was not a state actor,

24   explaining that the union did not perform a "function traditionally and exclusively

25   reserved for the States," the union was not "a willful participant in joint action with

26   the government or its agents," and "[n]o governmental unit has insinuated itself into

27   a position of interdependence with [the union] such [that it] is a joint participant in

28   the governmental activity." 2004 WL 3203950, at *13.

In *Kidwell*, the Fourth Circuit rejected that First Amendment challenge because, among other things, the challenged union conduct of providing certain benefits and rights only to union members did not involve state action. Although *Kidwell* did not involve a public-employee union, it involved the Railway Labor Act ("RLA"), which the Supreme Court has found to implicate state action in the context of fair-share fees. *See, e.g.*, *Abood*, 431 U.S. at 226 (discussing *Ry. Employees' Dep't v. Hanson*, 351 U.S. 225 (1956)). Notwithstanding the public-sector-like issues in *Kidwell*, the court concluded that the union's internal rules were not state actions:

> The coercive effect of the RLA over nonmember employees and its
> preemption of state law often give rise to state action. But often does
> not necessarily mean always. Many decisions by a union that has been
> elected collective bargaining representative, for example, support of a
> local political candidate or the design for the union's softball team
> uniforms, can hardly be considered state action.
>
> ***
>
> [S]tate action would [not] exist over the internal membership and
> procedural decisions of a union chosen collective bargaining
> representative under the RLA. . . . The union's decision  . . over the
> requirements for membership, although having an impact on those
> who may participate in the union's duties in carrying out its role as
> collective bargaining representative, does not constitute state action.

*Kidwell*, 946 F.2d at 299.

Legions of other cases have reached similar conclusions, even in cases involving public-employee unions: unions' internal rules and decisions are simply not state actions. *See, e.g.*, *Hallinan v. Chicago FOP Lodge No. 7*, 570 F.3d 811, 813–14 (7th Cir. 2009) (Chicago police union) (rejecting, on state-action grounds, a constitutional challenge to a union's allegedly discriminatory failure to pursue a grievance); *Messman*, 133 F.3d at 1044 (city firefighters union) ("[A] union's

1  internal governing rules usually are not subject to First Amendment prohibitions.");
2  *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1377 (6th Cir. 1987)
3  (public teachers union) (noting an earlier ruling concluding that "it would be
4  inconceivable that . . . [calling an illegal strike] on the part of the [teachers] union
5  could be treated as an act under color of state law for the purposes of Section 1983");
6  *Stevens v. Jefferson*, 421 F. App'x 639, 640 (7th Cir. 2011) (Chicago transit union)
7  (characterizing the appeal as "frivolous" because "[s]uits under § 1983 are meant to
8  deter state actors" and "[u]nions and union officials are not state actors"); *N.Y. 10-13*
9  *Ass'n, Inc. v. City of N.Y.*, No. 98-1425, 2000 WL 1376101, at *8 (S.D.N.Y. Sept.
10  22, 2000) (New York police union) ("The inability of the plaintiffs to vote in the
11  unions is purely a result of the internal rules of the unions themselves, not the result
12  of any government conduct, and the plaintiffs have no First Amendment right to be
13  permitted to vote in the unions."), *aff'd*, 36 F. App'x 8 (2d Cir. 2002); *Earl v.*
14  *Sheriff's Ass'n*, No. 10-0696, 2010 WL 4955328, at *2 (S.D. Tex. Nov. 29, 2010)
15  (sheriff's union) ("The conduct of . . . Officers' Union . . . is not 'state action' under
16  42 U.S.C. § 1983."); *Laredo FOP Lodge 911 v. City of Laredo*, No. 04-134, 2005
17  WL 1189839, *3 (S.D. Tex. Apr. 29, 2005) (city police union) ("unions are not state
18  actors").
19       4. The Complaint alleges only a few instances of governmental interaction, but
20  these too fail to establish state action. Nor should these mere mentions obfuscate the
21  fact that the specific challenged conduct is the Unions' internal membership rules
22  and not any action by the State or districts.
23       a. The Complaint notes that California state law establishes the public-
24  employee collective bargaining system. Compl. ¶¶ 36–40. But if Plaintiffs are
25  "argu[ing] that because state action is present when a state employer forces
26  employees to associate with a union, every action the union takes becomes action
27  under color of law," that would be wrong. *Hallinan*, 570 F.3d at 817–18.
28  "Governmental regulation or participation in some of the affairs of unions . . . does

not consequently make every union activity so imbued with governmental action that it can be subjected to constitutional restraints." *Id.* at 818 (internal quotation and citations omitted). And while state law establishes collective bargaining, this does not transform internal union rules into state actions. *Id.*; *see also White v. Commc'ns Workers Local 1300*, 370 F.3d 346, 351 (3d Cir. 2004); *see also id.* at 352 ("[T]he naked fact that a [union] . . . is accorded monopoly status is insufficient alone to denominate that entity's action as government action." (relying on *Jackson*, 419 U.S. 345); *Hovan*, 704 F.2d at 644 (rejecting dissenting employee's argument that "'governmental action' follows automatically from the fact that the NLRA vests the union with exclusive authority to bargain with [the] employer").

    b. The Complaint also alleges that the Unions use their bargaining authority to induce non-members to join the Unions. In particular, Plaintiffs allege that, "instead of negotiating with districts to provide better disability insurance and maternity benefits for all teachers, the unions have opted to provide access to such disability insurance and maternity benefits themselves, only to their members." Compl. ¶ 42; *see also id.* ¶ 11. They further allege that this "withholding of benefits" is done "under color of state law," *id.* ¶ 49, and that this bargaining is inconsistent with the Unions' duty of fair representation, *id.* ¶ 11. This allegation fails to establish state action for several reasons.

    First, Plaintiffs do not seek relief from this alleged scheme. A court order requiring that the Unions bargain for and the school districts provide the sought benefits to all bargaining-unit employees would remedy that situation. But that is not what the Plaintiffs want: they want this Court to order the Union to give them members-only benefits for free or on an *à la carte* basis.

    Second, to the extent Plaintiffs allege that the Unions are violating the duty of fair representation, *see id.* ¶ 11, the proper recourse for that violation is not a § 1983 claim, but an unfair practice charge within the primary exclusive jurisdiction of the PERB. *See* Cal. Gov't Code § 3541.5. And a Union unfair practice is not state action.

"[P]rivate misuse of a state statute does not describe conduct that can be attributed to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 940 (1982). If the state law proscribes rather than authorizes the complained-of conduct, it cannot "be ascribed to any governmental decision," does not have "the authority of state officials" behind it, and is therefore "only private action" for purposes of § 1983. *Id.*

Third, Plaintiffs' allegations concerning the Unions' bargaining conduct are both conclusory and implausible under *Iqbal*. To render the allegation plausible, *all* of the following would have to true:

- Districts are willing to provide—for "free" and without any offsetting bargaining demands—all the benefits Plaintiffs identify. (Otherwise, Plaintiffs are simply complaining about the particular trade-offs the Unions make in bargaining, which provide no basis for a First Amendment claim. *See Abood,* 431 U.S. at 222–23.)

- School districts are willing to provide some benefits (like legal representation in proceedings to revoke an educator's teaching license) that may run contrary to the districts' own interests and others (like flood and disaster relief) that are beyond the statutory scope of bargaining. *See* Cal. Gov't Code § 3543.2(a) (bargaining "limited to matters relating to wages, hours of employment, and other terms and conditions of employment").

- The Unions decline these benefits from districts and spend their own funds to provide them when they could instead accept the free benefits and put Union funds to other use.

- The Unions provide the entire panoply of benefits *and* fund expressive activities from only non-chargeable fees, yet the dissenting fee payer cannot take their rebate of the non-chargeable fees and purchase a small subset of desired benefits on open insurance markets.

1  • And virtually all districts in the State cooperate with this
2     discriminatory scheme to enhance the Unions' political clout even
3     though districts frequently do not agree with the Unions' policy
4     positions, and "[t]he [public] employer has an interest in the union's
5     proper performance of its duty of fair representation [in that] the
6     employer may be exposed to liability in a variety of factual
7     situations." *Conn v. Nat'l Can Corp.*, 124 Cal. App. 3d 630, 635
8     (1981).[1]

9        Both "experience and common sense" tell us that none of these, much less all
10  of them, make sense. *Iqbal*, 556 U.S. at 679. There are instead obvious non-coercive
11  and legitimate reasons for unions to offer members-only benefits. A member-run
12  Union that makes its members' lives better—even in ways that extend beyond
13  collective bargaining—will thrive; and one that does not, will not. This "obvious
14  alternative explanation" should be accepted over Plaintiffs' baseless allegation. *Id*. at
15  682.

16        c. The Complaint also notes that the Defendant superintendents process
17  payroll deductions in accordance with State law. Compl. ¶¶ 31–34 & 40. This does
18  not establish state action. Plaintiffs do not challenge the government deducting dues
19  from their paychecks; they challenge how much the Unions charge and what Union
20  dues are spent on. Even if the payroll deduction ceased, the Unions' requirement that
21  members pay full dues to receive full rights and benefits would remain in effect.

22        The Complaint should be dismissed because the Unions are not state actors.

23  ────────────────
24  [1] "[W]here the union and the state are in adversarial positions . . .allegations that the
     union and the state conspired to commit a Section 1983 violation 'ring especially
25  hollow.'" *Perry v. Metro. Suburban Bus. Auth.*, 390 F. Supp. 2d 251, 263 (E.D.N.Y.
     2005); *see also Bureau of Alcohol, Tobacco & Firearms v. Fed. Labor Relations*
26  *Auth.*, 464 U.S. 89, 107 (1983) ("[B]asic assumption underlying collective
     bargaining in both the public and private sector [is] that the parties proceed from
27  contrary and to an extent antagonistic viewpoints and concepts of self-interest.").
28

**B. Plaintiffs have no First Amendment right to remain members of the Unions while refusing to pay full dues.**

1. Plaintiffs contend that the First Amendment is violated here because they "feel compelled not to exercise their First Amendment right [to resign their Union memberships] because doing so would require them to forgo [Union] benefits and voting rights." Compl. ¶ 74. In other words, "[t]he basic thrust of [the Complaint] is that it is unlawful for [the Unions] to put [Plaintiffs] to the choice of either full membership or financial core non-membership." *Masters*, 2004 WL 3203950, at *5. Yet, as this Court and others have already held, putting employees to that choice is entirely consistent with the First Amendment. The mere "pressure to join the exclusive representative" one might feel because membership confers certain rights or privileges "does not create an unconstitutional inhibition on associational freedom." *Minn. State Bd. for Cmty. Coll. v. Knight*, 465 U.S. 271, 290 (1984).

Plaintiffs assert that they seek the same rights "that non-members have," Compl. ¶ 14, but this is not so. They already have those rights—namely, the right to decline membership and thereafter pay a reduced fee for representational services. And despite Plaintiffs' facially implausible claim that teachers are "effectively compelled" not to exercise this right, many others in fact pay only the fair-share fee. *See*, *e.g.*, *Harik v. Cal. Teachers Ass'n*, 326 F.3d 1042, 1046 (9th Cir. 2003). Instead, Plaintiffs want more than fair-share feepayer rights: they seek Union-funded benefits free of charge. Plaintiffs' theory would require a radical change in how Unions and other associations develop member benefits and engage in expressive activity. The First Amendment requires nothing of the sort.

As this Court stated in *Masters*, "the law is clear" that the Unions may put Plaintiffs to "precisely th[e] choice" decried here. 2004 WL 3203950, at *5 n.6. Although a non-member can only be compelled to pay fees germane to collective bargaining, "a union is entitled to require, as a condition of membership, that

members pay a fee that covers the costs of both the union's non-representational and representational activities." *Id.* This arrangement "violat[es] no one's rights." *Id.*

The *Kidwell* court likewise upheld a union's requirement that members pay full dues, reasoning that "the precise origin and content of [any] claimed rights [to be free of such a requirement] are not clear." 946 F.2d at 299. The court went on to observe that an employee in Plaintiffs' position faces "no . . . quandary":

> She may keep her job by paying only the minimum nonpolitical and nonideological component of the union's dues. If she chooses to join the union, she is no longer an involuntary contributor and may be bound by the will of the majority. Put simply, the political activities which a majority wishes to engage in will probably result in expenses. They are very like the lunch which is never free. Choosing voluntarily to join the union, a member must meet her or his share of the expenses.

*Id.* at 300. And the existence of members-only rights and privileges did not alter that analysis: "That membership does have some privileges is not enough to raise a First Amendment right to object." *Id.* at 301; *see also Pattern Makers v. NLRB*, 473 U.S. 95, 107 n.18 (1985) ("By resigning, the worker surrenders his right to vote for union officials, to express himself at union meetings, and even to participate in determining the amount or use of dues he may be forced to pay under a union security clause." (internal quotations and citations omitted)).

This analysis applies with equal force to public-employee unions. In *Liegmann*, the court rejected a First Amendment challenge by California Teachers Association members who objected to a dues increase, reasoning that "union members objecting to the use of their member fees for political purposes retain the right to be non-members" and members do not have "the right to veto the use of their dues to finance any particular expenditure." 395 F. Supp. 2d at 928. And in *Farrell*, firefighters sought to enjoin the use of their union dues for litigation which they

1   found ideologically offensive, but that court rejected the claim, reasoning that "[i]f

2   plaintiffs wish to participate in every aspect of union decision-making, they must

3   join the union and accept the will of the majority." 781 F. Supp. at 649.

4        This should end the matter. Plaintiffs' claims do not materially differ from

5   those in *Masters*, *Kidwell*, *Liegmann*, or *Farrell*. Although Plaintiffs contend that

6   they wish to free themselves from "compelled" Union membership, in reality, they

7   seek to retain Union voting rights and members-only benefits but not pay for them.

8   There is, as the *Kidwell* court recognized, no constitutional right to a free lunch.

9        2. If Plaintiffs contend that objectors have a First Amendment right to vote on

10  internal union affairs and negotiating positions, that position is entirely foreclosed by

11  the Supreme Court's decision in *Knight*. There, community college faculty who were

12  not union members brought a First Amendment challenge to a state law that required

13  public employers to engage in official exchanges of views only with union

14  representatives on policy questions related to employment but outside the scope of

15  mandatory bargaining. *Knight*, 465 U.S. at 273. The nonmembers argued, among

16  other things, that their right not to speak and associate with the union was infringed

17  because, to have a say over the issues discussed by the state and the union, they had

18  to join the union. *Id.* at 288. But the Supreme Court rejected their claims, holding

19  that even though membership was required to have a say in certain contexts, the

20  plaintiffs' speech and associational rights were not violated because they were not

21  compelled to join the union, and they were otherwise free to speak out. *Id*. This was

22  true, the *Knight* Court reasoned, even though non-members may feel some pressure

23  to join, as Plaintiffs assert here, *see* Compl. ¶ 74. To the notion that tough choices

24  amount to compulsion, the Court responded:

25        [A]ppellees' associational freedom has not been impaired . . . .

26        Appellees may well feel some pressure to join the exclusive

27        representative in order to give them the opportunity to serve on the

28        "meet and confer" committees or to give them a voice in the

representative's adoption of positions on particular issues. That
pressure, however, is no different from the pressure they may feel to
join [the union] because of its unique status . . . Moreover, the
pressure is no different from the pressure to join a majority party that
persons in the minority always feel. Such pressure is inherent in our
system of government; it does not create an unconstitutional inhibition
on associational freedom.

*Id.* at 290; *cf. NLRB v. Machinists Local 1327*, 608 F.2d 1219, 1223 (9th Cir. 1979)
("Union's right to enforce the fines it imposes on its members is a corollary of the
member's rights not only to reap the benefits of continuing union membership, but
also to maintain a continuing voice in the union's course of action.").

3. The Unions' decisions to provide certain membership-based benefits
likewise does not create the kind of compulsion that implicates the First Amendment.
*See Masters*, 2004 WL 3203950, at *6 (rejecting the plaintiff's First Amendment
claim even though feepayer status deprived the plaintiff of "rights, privileges, *and
benefits* of full membership") (emphasis added); *see also Kidwell*, 946 F.2d at 301
("That membership does have some privileges is not enough to raise a First
Amendment right to object."). For starters, the fact that many teachers can and do
decline membership betrays Plaintiffs' claim of compulsion.

Putting one to a choice between enjoying certain benefits or deciding not to
join an organization with which one disagrees has been held to not violate the First
Amendment in other contexts as well. In *Besig v. Dolphin Boating & Swimming
Club*, 683 F.2d 1271, 1276 (9th Cir. 1982), plaintiffs brought a First Amendment
claim under a nonassociation theory in a case where membership in a private club
that operated public facilities resulted in preferable access to the facilities (e.g.,
members could use the facilities at any time; non-members' access was limited to
specific times), but the Ninth Circuit rejected the claim because membership was not
mandatory to access the desired public facilities. *See also Gordon v. State Bar of*

1  *Cal.*, 369 F. App'x 833, 835 (9th Cir. 2010) (rejecting bar applicant's forced

2  association challenge to the bar rule that one must attend an ABA-accredited law

3  school to become a member of the bar because other, although more difficult,

4  alternatives were available).

5      And Plaintiffs' theory that the Unions use benefits to compel teachers into

6  paying for expressive activity does not save their First Amendment challenge. Again,

7  this is not even plausible. *See supra*, Section I.A.4.b. Moreover, the Unions' duty of

8  fair representation—including the duty to refrain from arbitrary or discriminatory

9  treatment of non-members in the course of contract negotiations, *see, e.g.*, *L.A.*

10 *Council of Sch. Nurses v. L.A. Unified Sch. Dist.*, 113 Cal. App. 3d 666, 672

11 (1980)—negates any notion that the Unions can or could manipulate the bargaining

12 process to discriminate against dissenting teachers to coerce them to join the union.

13 Allegations of unfair labor practices, however, must be brought to the PERB. *See*

14 Cal. Gov't Code § 3541.5.

15 **II. Relief Plaintiffs seek would violate the Unions' First Amendment rights.**

16     Plaintiffs' claims also must fail because the relief they seek—judicial

17 modification of the membership structure and ideological activities of an expressive

18 association—would itself violate the First Amendment. *See Citizens United v. FEC*,

19 558 U.S. 310, 326 (2010) ("Courts, too, are bound by the First Amendment."). It is

20 well established that the First Amendment right to free association extends to labor

21 unions, including public-employee unions. *See, e.g.*, *Kidwell*, 946 F.2d at 301 ("A

22 union appears to be an archetype of an expressive association."); *Labov v. Lalley*,

23 809 F.2d 220, 220–23 (3d Cir. 1987) ("[E]fforts of public employees to associate

24 together for the purpose of collective bargaining involve associational interests

25 which the first amendment protects."). "Because the right of association would be

26 hollow without a corollary right of self-governance, there must be a right not only to

27 form . . . associations but to organize and direct them in the way that will them most

28 effective." *S.F. County Democratic Cent. Comm. v. Eu*, 826 F.2d 814, 827 (9th Cir.

1987) (citations and quotation marks omitted), *aff'd*, 489 U.S. 214 (1989). And "[t]here can be no clearer example of an intrusion into the internal structure or affairs of an association than . . . forc[ing] the group to accept members it does not desire." *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984).

## A. The Unions have a First Amendment right to determine membership rights and responsibilities, and how Union officers are elected.

"Freedom of association encompasses the right of union members to select their representatives." *Teamsters Local 186 v. Brock*, 812 F.2d 1235, 1237 (9th Cir. 1987). Both federal and California law explicitly recognize this right. *See* 29 U.S.C. § 411 ("[LMRDA] shall [not] be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization."); Cal. Gov't Code § 3543.1 ("Employee organizations may establish reasonable restrictions regarding who may join . . . .").

Yet Plaintiffs seek to have this Court impair the Unions' right to adopt reasonable membership requirements. Plaintiffs do not agree with the membership requirement that voting members be full members, and they do not like this requirement in large part because member dues support the Unions' expressive political activities. But that is how expressive organizations, and particularly democratic expressive organizations like the Unions, generally work. If one joins them, one accepts being bound by the majority's will, including decisions about the organization's political activities. No one, for example, would join the American Automobile Association and contend that they have a First Amendment right to withhold funding for expressive activities with which the member disagrees (e.g., lobbying for highway over mass-transit funding), while still receiving member benefits (e.g., 24-hour roadside assistance) for free or at a reduced rate.

Court-imposed *à la carte* membership would obviously diminish the organization's ability to operate effectively. "[I]n a society where many people are money conscious, in other words, known to free ride, an association could find itself

1    practically bankrupt and powerless if it had to permit all members to opt out of

2    payments." *Kidwell*, 946 F.2d at 302; *see also Republican Party of State of Conn. v.*

3    *Tashjian*, 770 F.2d 265, 282 (2d Cir. 1985) ("[I]n light of the intimate relationship

4    between the structure of a[n] association and the message ultimately transmitted by

5    that group, . . . the inexorable effect of [dictating the terms of the association's

6    membership] is to alter [the association's] message."), *aff'd*, 479 U.S. 208 (1986).

        **B. The Unions have a First Amendment right to engage in political**

            **expressive activity.**

9         "Public-sector unions have the right under the First Amendment to express

10   their views on political and social issues without government interference." *Knox v.*

11   *Serv. Employees Int'l Union, Local 1000*, 132 S. Ct. 2277, 2295 (2012). "[T]he

12   union remains as free as any other entity to participate in the electoral process with

13   all available funds *other than the state-coerced agency fees* lacking affirmative

14   permission." *Davenport*, 551 U.S. at 190 (emphasis added).

15        Plaintiffs may disagree with the Unions' expressive political activities, and

16   they may object to funding those activities by not joining. Plaintiffs' disagreement,

17   however, cannot impede the Unions' right to take positions with which Plaintiffs

18   disagree. "[T]he majority [of union members] also has an interest in stating its views

19   without being silenced by the dissenters." *See Int'l Ass'n of Machinists v. Street*, 367

20   U.S. 740, 773 (1961). And "the First Amendment simply does not require that every

21   member of a group agree on every issue" in order for the group to exercise its right

22   to expression. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 655 (2000). The "First

23   Amendment protects [an organization's] speech, even if it was enabled by economic

24   transactions with persons or entities who disagree with the speaker's ideas." *Citizens*

25   *United*, 558 U.S. at 351. The Unions' speech cannot constitutionally be limited to

26   protect dissenting members. *Id.* at 361. Instead, dissenters can engage in their own

27   speech, change the Unions' message through its democratic procedures, or resign

28   their membership and pay only chargeable expenses. *See id.* at 360–61 (dissenting

shareholders' are sufficiently protected from "being compelled to fund corporate political speech" because, among other reasons, they can challenge disagreeable political speech "through the procedures of corporate democracy").[3]

## CONCLUSION

For the foregoing reasons, the Unions respectfully request that the Court dismiss the Complaint with prejudice.

---

[3] Finally, it bears mentioning that a serious threshold question exists regarding whether Plaintiffs have standing. Plaintiffs' alleged injury is that they are "forc[ed] . . . to forgo important employment-related benefits and voting rights in order to exercise their First Amendment right to refrain from contributing to the unions' political and ideological expenditures, thereby punishing Plaintiffs for exercising their First Amendment rights." Compl. ¶ 20. Plaintiffs, however, are union members and therefore have not "forgo[ne] important [membership]-related benefits and voting rights." Others may have forgone these, but Plaintiffs cannot establish their standing based upon others' injuries. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 499 (1975). And Plaintiffs' "injury" in "contributing to the unions' political and ideological expenditures" fails to establish standing because this injury is not traceable to the Unions or the government because the "injury" is inflicted by the voluntary actions of Plaintiffs, and "self-inflicted" injuries "so completely due to [Plaintiffs'] own fault" do not satisfy standing's traceability requirement. *See, e.g.*, *Petro-Chem Processing, Inc. v. EPA*, 866 F.2d 433, 438 (D.C. Cir. 1989); *see also McConnell v. FEC*, 540 U.S. 93, 228 (2003), *overruled on other grounds by Citizens United*, 558 U.S. 310; *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976); *Mendia v. Garcia*, 768 F.3d 1009, 1012 (9th Cir. 2014).

Respectfully submitted,

Dated:  May 20, 2015

/s/Eric A. Harrington

ALICE O'BRIEN (CA #180208)
aobrien@nea.org
JASON WALTA, *pro hac vice*
jwalta@nea.org
ERIC A. HARRINGTON
(CA #257178)
eharrington@nea.org
DERRICK R. WARD,* *pro hac vice*
dward@nea.org
National Education Association

LAURA P. JURAN (CA #199978)
ljuran@cta.org
JACOB RUKEYSER (CA #233781)
jrukeyser@cta.org
RICHA AMAR (CA #240509)
ramar@cta.org
California Teachers Association -
Legal Department
11745 East Telegraph Road
Santa Fe Springs, California 90670
Telephone: 650.552.5414
Fax: 650.552.5019

Counsel for Counsel for Defendants
National Education Association;
California Teachers Association;
United Teachers Los Angeles; United
Teachers of Richmond CTA/NEA

* Admitted to practice in Texas;
practicing under the supervision of
Jason Walta, a member of the District
of Columbia Bar.

DAVID STROM, *pro hac vice*
American Federation of Teachers
555 New Jersey Avenue NW
Washington, DC 20001
Telephone: 202.393.7472
Fax: 202.393.6385
dstrom@aft.org

JESUS QUINONEZ (CA #106228)
MICHAEL PLANK (CA #290943)
Holguin, Garfield, Martinez & Quinonez
APLC
800 West Sixth Street, Suite 950
Los Angeles, CA 90017
Telephone: 213.623.0170
Fax: 213.623.0171
jquinonez@hgmq.org

STEWART WEINBERG (CA #31493)
DAVID A. ROSENFELD (CA #58163)
JANNAH MANANSALA
(CA #249376)
Weinberg, Roger & Rosenfeld P.C.
1001 Marina Village Parkway, Suite 200
Alameda, CA 94501-1091
Telephone: 510.337.1001
Fax: 510.337.1023
jmanansala@unioncounsel.net

Counsel for Defendants American
Federation of Teachers; California
Federation of Teachers; United Teachers
Los Angeles