UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:15-cv-02465-SVW-AJW | Date | September 28, 2015 |
| Title | *April Bain et al v. California Teachers Association et al* | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** IN CHAMBERS ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [75]

**Background**

On April 3, 2015, four dues-paying members of public school teachers' unions ("Plaintiffs") filed suit against teachers' unions and school superintendents ("Defendants"). (Compl. ¶¶ 21-34.) In their first amended complaint ("FAC"), Plaintiffs allege that they are "effectively compelled" to relinquish their First Amendment right not to speak because they cannot enjoy substantial employment-related benefits and union voting rights without making contributions that fund the unions' political and ideological activities. (*See* FAC ¶¶ 4-17.)

On July 17, 2015, Defendants moved to dismiss the FAC for failure to state a claim for which relief can be granted. (Dkt. 75.) Defendants argue: (1) no First Amendment violation can result from internal union decisions because that is not state action; (2) even if there is a state action, pressure to join or remain in a union does not amount to an unconstitutional condition and; (3) Plaintiffs' relief sought would violate Defendants' First Amendment rights by hindering their right of association through their right of self-governance. (*See id.* at 7-24.)

For the reasons set forth below, the Court grants the Defendants' motion to dismiss without prejudice and leave to amend within 30 days of this order.

**Legal Standard**

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02465-SVW-AJW | Date | September 28, 2015 |
|---|---|---|---|
| Title | *April Bain et al v. California Teachers Association et al* | | |

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *See* Fed. R. Civ. Proc. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Thus, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Where a complaint is dismissed, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (abuse of discretion to not apply *Foman* factors).

**Factual Allegations**

Plaintiffs allege that the State of California and teachers' unions effectively compel them to join unions and that the unions require them to contribute to political and ideological expenditures as a condition of membership. (FAC ¶¶ 4-5.)

:
_____
Initials of Preparer
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:15-cv-02465-SVW-AJW | Date | September 28, 2015 |
| Title | *April Bain et al v. California Teachers Association et al* | | |

*Exclusive Bargaining Representative*

Plaintiffs argue that the State has created a legal framework that has foreseeably enabled teachers' unions to compel contributions used for political and ideological expenditures. California law provides that a union may become the exclusive bargaining representative for public school employees after it submits proof that the majority of employees in a bargaining unit wish to be represented exclusively by the union.[1] (*Id.* ¶ 37.) As the exclusive bargaining representative, a union may only bargain over the "terms and conditions of employment." (*Id.*) The terms and conditions of employment include: wages, hours of employment, health and welfare benefits, leave, transfer and reassignment policies, safety conditions of employment, class size, procedures to be used for the evaluation of employees, and procedures to be used for processing grievances.[2] (*Id.* ¶ 38.) When an entity is designated the exclusive bargaining representative, it has a duty to fairly represent each employee in matters of collective bargaining. (*Id.* ¶ 37.)

*Agency-Shop Provision*

After a union is designated an exclusive bargaining representative, it is allowed to enter an agency-shop arrangement with individual school districts.[3] (*Id.* ¶ 8, 40.) State law allows exclusive bargaining representatives to require all teachers in their district to either join the union or pay a fair share service fee.[4] (*See id.*) This puts teachers to a choice: (1) become a member of the union and pay "chargeable" and "non-chargeable" dues, or (2) become a nonmember and pay only "chargeable" fees. (*Id.* ¶ 40.) Only nonmembers must receive a notice that states the percentage of fees that are "non-chargeable" and they may opt out of paying those fees. (*Id.* ¶ 41.) There is no provision of law that allows members to opt out of "non-chargeable" fees, including on fees used for political and ideological expenditures. (*Id.* ¶ 42.) In fact, the unions are authorized by law to have dues and fees deducted directly from an employee's paycheck. (*Id.* ¶ 42, 66-67.)

*Membership Benefits*

There are significant benefits to union membership that are not available to nonmembers. Many employment-related benefits are conditioned on union membership and therefore induce teachers to become or remain union members. (*Id.* ¶ 43.) Examples of employment-related benefits provided directly by teachers' unions include: disability insurance, free legal representation, life insurance, death and dismemberment benefits, and disaster relief. (*Id.* ¶¶ 44, 47-52.) In some instances, the unions

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:15-cv-02465-SVW-AJW | Date | September 28, 2015 |
| Title | *April Bain et al v. California Teachers Association et al* | | |

provide member benefits even though they are authorized to negotiate for equivalent benefits through collective bargaining. For instance, school districts can only participate in California State Disability Insurance and Paid Family leave programs through a collectively bargained agreement. (*Id.* ¶ 45.) Therefore, unions effectively have a veto on school district participation and have opted to provide disability insurance and maternity benefits directly to their members. (*Id.* ¶ 46.) Unions tout these exclusive employment-related benefits to deter teachers from exercising their First Amendment rights. (*Id.* ¶ 53.) Communications provided to nonmembers inform teachers of all the benefits that they could receive if they opted in to union membership. (*Id.* ¶ 53-55.) Unions train local leaders on how to "convert agency-fee payers to members" and plan to expand their benefits to further expand the disparity in benefits between member and nonmembers. (*Id.* ¶¶ 56-57.)

Union membership also allows for voting rights. Nonmembers are unable to vote in union votes, based on the rules of some unions. (*Id.* ¶ 58.) This includes voting on matters that directly implicate collective bargaining interests. (*Id.*) This is a feature of membership that is used to deter teachers from opting out of membership. (*Id.*)

*Predictable Consequences of State Actions*

Plaintiffs argue that the state law and union practices predictably lead to coerced political expenditures. (*Id.* ¶ 60.) The State is responsible for determining the matters that are subject to collective bargaining. (*Id.* ¶ 64.) The State has, through local school districts, entered into collective bargaining agreements with unions that require teachers to choose between non-membership and membership that includes expenditures on political and ideological expression.[5] (*Id.* ¶ 65.) The State deducts "chargeable" and "non-chargeable" dues directly from teachers' paychecks and gives them to the unions. (*Id.* ¶ 66-67.) Further, the State allows unions to bundle significant employment-related benefits with political and ideological expenditures, allowing unions to coerce teachers into contributing to those expenditures. (*Id.* ¶ 68.) Because collective bargaining agreements between unions and local school districts do not include certain employment-related benefits, the State facilitates the unions' ability to fill this gap and thus coerce funds for political and ideological expenditures by touting the benefits of members-only benefits. (*Id.* ¶ 71.)

*Unions' Political and Ideological Expenditures*

Unions engage in significant political and ideological expenditures against the will of many of

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-02465-SVW-AJW | Date | September 28, 2015 |
|---|---|---|---|
| Title | April Bain et al v. California Teachers Association et al | | |

their members. (*Id.* ¶¶ 72-91.) Union dues and agency fees yield significant revenues for unions. (*Id.* ¶ 77.) Local and national unions spend millions of dollars on political expenditures. For example, the CTA spent over $211 million on political expenditures from 2000 through 2009. (*Id.* ¶ 78.) The expenditures go to causes that are disagreeable to some teachers: political donations go almost entirely to the Democratic Party, some teachers do not support education-related measures supported by the unions, and the unions support causes that are unrelated to education altogether. (*Id.* ¶¶ 79-90.)

**State Action**

*Legal Standard*

To state a claim under § 1983, a plaintiff must show that the allegedly unconstitutional conduct is fairly attributable to the State.[6] *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) (stating "there must be a sufficiently close nexus between the State and the challenged action"). This rule applies in full force with respect to First Amendment claims. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 566 (1995); *see also Cent. Hardware Co. v. N.L.R.B.*, 407 U.S. 539, 547 (1972). But "[w]hat is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). In this fact-intensive inquiry, courts have employed a number of different approaches to determine whether private acts can be treated as those of the State. *Id.* at 296.

The Ninth Circuit applies four tests to determine whether there was state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test.[7] *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 995 (9th Cir. 2013). "Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). Before the Court applies the state-action tests, it must examine the complaint to discern "the specific conduct of which the plaintiff complains." *Sullivan*, 526 U.S. at 51 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). This is important because "[a]n entity may be a state actor for some purposes but not for others." *George v. Pac.-CSC Work Furlough*, 91 F.3d 1227, 1230 (9th Cir. 1996).

*Analysis*

Initials of Preparer  PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02465-SVW-AJW | Date | September 28, 2015 |
|---|---|---|---|
| Title | *April Bain et al v. California Teachers Association et al* | | |

### Specific Conduct

We understand Plaintiffs to argue that their First Amendment rights are violated by the nature of the choice they must make between remaining union members and leaving the union. If they accept the speech restrictions imposed by union membership, they receive significant employment-related benefits and voting rights in the union. (FAC ¶ 15.) If they choose to leave the union, they will lose those benefits and voting rights. (*Id.* ¶ 7.) In Plaintiffs' view, this is a Hobson's choice. Because there is a significant disparity between benefits available to union members and nonmembers, they would face significant adverse consequences if they chose to leave their unions. (*See id.* ¶¶ 3, 10, 16, 57.) As a result, they are "effectively compelled" to abandon their First Amendment rights. (*Id.* ¶ 15.)

But Plaintiffs do not argue that all of the acts described in their FAC would violate their First Amendment rights. We do not understand Plaintiffs to contend that laws authorizing agency-shop agreements or the specific terms of any collectively bargained agreements facially violate their rights.[8] Nor do we read their FAC to allege that there would be a constitutional violation based only on a private union's membership requirements, without a sufficient connection to some government acts. Further, State law regulates many aspects of the teachers' unions, but Plaintiffs have not alleged a conspiracy between unions and government officials to create those laws or a cooperative effort to bundle political and ideological contributions with employment-related benefits and voting rights in union membership requirements.

Thus, as the Court considers whether Plaintiffs have established state action, it must search for a sufficient connection between government actions and the disparity of benefits that Plaintiffs argue "effectively compels" ideological and political speech.

### Plaintiffs' State Action Argument

Plaintiffs rest their state action argument primarily on the proposition that "[w]hen a State adopts an agency-shop system and confers exclusive bargaining status on a union, and the union in turn wields that power to coerce employees into funding the unions' political speech, the State and the union are joint actors in an unconstitutional scheme." (Dkt. 76, 16.) For this proffered rule, they rely primarily on three Supreme Court cases: *Hanson*, *Street*, and *Abood*. (*Id.* at 16-17.) Plaintiffs are correct, in

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02465-SVW-AJW | Date | September 28, 2015 |
|---|---|---|---|
| Title | *April Bain et al v. California Teachers Association et al* | | |

part. It is the relationship between the union and the State that determines whether state action exists. But the Court did not find state action in those cases based on a joint action theory. Instead, state action in those cases was premised on what amounts to a State compulsion theory because private actors were directly authorized by legislature to wield the specific power allegedly used to impinge First Amendment rights.

Plaintiffs argue that their general rule was first demonstrated in *Railway Employment Department v. Hanson*, 351 U.S. 225 (1956). (Dkt. 76, 16.) In *Hanson*, non-union employees of the Union Pacific Railroad brought suit against the company and labor organizations representing other employees of the railroad. 351 U.S. at 227. The non-union employees argued that the terms of the union shop agreement, that required union membership as a condition of employment, violated the "right to work" provision of the Nebraska Constitution and the First Amendment. *Id.* at 227-28, 230. The Court found that although the Railway Labor Act did not compel the union shop agreement, the Act's union shop provision was the source of any constitutional invasion: "The enactment of the federal statute authorizing union shop agreements is the governmental action on which the Constitution operates, though it takes a private agreement to invoke the federal sanction." *Id.* at 232. Thus satisfied that the union shop agreement resulted from state action, the Court proceeded to reach the merits of the non-union employees' First Amendment claims. *See id.* at 233-238.

Next, Plaintiffs direct the Court's attention to *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740 (1961). Plaintiffs assert that *Street* is another example of the Court "treat[ing] a union as a state actor in connection with a dues-related First Amendment challenge." (Dkt. 76, 16.) In *Street*, members of a railroad union brought an action against labor organizations and the carriers of the Southern Railway System, alleging that their constitutional rights were violated by a union-shop agreement entered into pursuant to the Railway Labor Act. *See* 367 U.S. at 742-45. The Court explained that *Hanson* only held that the union shop provision of the Railway Labor Act was constitutional on its face, but did not address the nature of "financial support" that could be compelled under a specific union shop agreement. *See id* at 746-49. Provided with a more complete record in *Street*, the Court reached the issue of whether the Railway Labor Act could be read to allow a union to force members to support political causes which they opposed through compelled fees in the agreement. *Id.* 749-50. Thus, the state action in *Street* as in *Hanson* was the action of Congress executed by private parties, not collaboration between public and private actors.

Finally, Plaintiffs interpret *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), to hold

:
_____
Initials of Preparer
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02465-SVW-AJW | Date | September 28, 2015 |
|---|---|---|---|
| Title | *April Bain et al v. California Teachers Association et al* | | |

that unions were state actors. (Dkt. 76, 17.) In *Abood*, Detroit teachers brought an action against the local board of education, the teachers union, and union officials. 431 U.S. at 211-13. The teachers argued that the agency-shop clause in the collective-bargaining agreement between the local board of education and the union violated their constitutional rights under the First Amendment. *Id.* at 213. But, much as with *Hanson* and *Street*, the underlying state action was legislation authorizing the private conduct. The Court explained that it was merely adjudicating the constitutionality of "Michigan's decision to authorize the agency shop in public employment." *Id.* at 224-25. Therefore, the Court analyzed the collective-bargaining agreement only because of the government action in authorizing that type of agreement. *See id.* at 226 n.23 (explaining that the Court could analyze the First Amendment question because of the "government action" of granting power to private groups).[9]

Because the specific conduct of which the Plaintiffs complain is not state delegated power, they cannot rely on the state compulsion rationale animating those decisions.[10] The state action theory set out in those cases only operates when the compulsion is authorized by state law. In *Hanson*, *Street*, and *Abood*, the unions were authorized by law to negotiate collective bargaining agreements that compelled employees to pay fees that could include political and ideological expenditures as a condition of employment. Under Plaintiffs' theory, State delegated power only goes so far. The State only delegates the power to put Plaintiffs to a choice. Unions cannot use the force of law to require a teacher to contribute to political and ideological expenditures as a condition of employment. Because the choice enabled by state law will not necessarily be coercive without more, Plaintiffs cannot establish state action in direct reliance on this line of cases.[11]

### Joint Action Test

Though the cases cited by Plaintiffs did not analyze state action under the joint action test, it is still possible that they can establish state action under a joint action theory.[12] Under the joint action test, "courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002) (quoting *Gallagher v. Neil Young Freedom Concert,* 49 F.3d 1442, 1453 (10th Cir. 1995)) (internal quotation marks omitted). A plaintiff may demonstrate joint action by proving that there was a conspiracy or by showing a private party was a willful participant in the joint action. *Franklin*, 312 F.3d at 445. In either case, this "requires a substantial degree of cooperative action." *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989). Indeed, the "inquiry focuses on whether the state has 'so far insinuated itself into a position of interdependence with [the private entity] that it must be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02465-SVW-AJW | Date | September 28, 2015 |
|---|---|---|---|
| Title | *April Bain et al v. California Teachers Association et al* | | |

recognized as a joint participant in the challenged activity . . . .'" *Id.* (quoting *Gorenc v. Salt River Project Agr. Imp. & Power Dist.*, 869 F.2d 503, 507 (9th Cir. 1989)). "This occurs when the state knowingly accepts the benefits derived from unconstitutional behavior." *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995).

  Here, the Plaintiffs suggest but do not allege a conspiracy. According to the FAC, California law "facilitates" the unions' coercion in a number of ways. (*See* FAC ¶¶ 60, 61, 68, 70, 95, 101.) But there is no allegation of a common objective or agreement between the unions and state officials. *See Taylor v. List*, 880 F.2d 1040, 1048 (9th Cir. 1989); *see also Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205, 1212 (9th Cir. 2002) ("The generalized allegation of a wink and a nod understanding between the [private actor and government actor] does not amount to an agreement or a conspiracy to violate [the plaintiff's] rights in particular."). The allegation that the system "foreseeably and predictably" leads to the current outcome, (FAC ¶¶ 59-71.), is the type of "passive acquiescence" that does not create state action, *Taylor*, 880 F.2d at 1048. Therefore, Plaintiffs have not made a sufficient showing to establish joint action under a conspiracy theory.[13]

  Plaintiffs also fail to demonstrate joint action under a willful participant theory. The FAC argues that even though there is no conspiracy, the State authorizes and facilitates the unions' coercive membership policies. (FAC ¶¶ 59-71.) The State's facilitation of private action can, under certain circumstances, form the basis of joint action. *See Brunette*, 294 F.3d at 1213 (rejecting joint action theory because "the [private actor's] actions were its own; they were not 'state actions' directed by or jointly conceived, facilitated or performed by the [government actor]"). State law is said to facilitate the unions' coercion by: empowering excusive collective bargaining in school districts, authorizing agency-shop agreements, defining what is properly subject of collective bargaining, empowering school districts to agree to collectively bargained terms that make teachers choose between full benefits and nonmember status, deducting "chargeable" and "non-chargeable" expenditures directly from teachers' paychecks, and allowing employment-related benefits to be bundled with political expenditures in "non-chargeable" expenditures. (*Id.* ¶¶ 62-68.)

  This theory fails because it does not allege the type of cooperation necessary to create joint action. The only action that Plaintiffs specifically allege to be "cooperative" is the collective bargaining between unions and school districts. (*See id.* ¶¶ 40, 65.) Though these agreements define what must be paid by nonmembers, they are conspicuously silent on the terms of membership. (*See id.* Ex. B-D.) They do not require or prohibit the bundling that is objectionable to the Plaintiffs. Indeed,

                                                       :

                              Initials of Preparer  PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02465-SVW-AJW | Date | September 28, 2015 |
|---|---|---|---|
| Title | *April Bain et al v. California Teachers Association et al* | | |

it appears that Plaintiffs' ultimate grievance is the lack of state action in prohibiting bundled employment-related benefit and political expenditures as a part of membership dues.  (*See id.* ¶ 7.) Because Plaintiffs fail to establish a connection between the unions' relationship with a government actor and the specific decision to bundle membership requirements, they cannot establish state action on this theory.  *See Mathis v. Pac. Gas & Elec. Co.*, 75 F.3d 498, 503-04 (9th Cir. 1996) (willful participant theory requires evidence of cooperation with respect to the challenged action).  Therefore even if the Court were to find Plaintiffs' choice coercive, it cannot be fairly attributed to the State.[14]

**Conclusion**

For the aforementioned reasons, the motion to dismiss is granted without prejudice and leave to amend within 30 days of this order.

**So Ordered.**

---

[1] "An employee organization may become the exclusive representative for the employees of an appropriate unit for purposes of meeting and negotiating by filing a request with a public school employer alleging that a majority of the employees in an appropriate unit wish to be represented by such organization and asking the public school employer to recognize it as the exclusive representative."  Cal. Gov't Code § 3544(a).

[2] "The scope of representation shall be limited to matters relating to wages, hours of employment, and other terms and conditions of employment. "Terms and conditions of employment" mean health and welfare benefits as defined by Section 53200, leave, transfer and reassignment policies, safety conditions of employment, class size, procedures to be used for the evaluation of employees, organizational security pursuant to Section 3546, procedures for processing grievances pursuant to Sections 3548.5, 3548.6, 3548.7, and 3548.8, the layoff of probationary certificated school district employees, pursuant to Section 44959.5 of the Education Code, and alternative compensation or benefits for employees adversely affected by pension limitations pursuant to former Section 22316 of the Education Code, as that section read on December 31, 1999, to the extent deemed reasonable and without violating the intent and purposes of Section 415 of the Internal Revenue Code."  Cal. Gov't Code § 3543.2(a)(1).

[3] "Notwithstanding Section 3502, any other provision of this chapter, or any other law, rule, or regulation, an agency shop agreement may be negotiated between a public agency and a recognized public employee organization that has been recognized as the exclusive or majority bargaining agent pursuant to reasonable rules and regulations, ordinances, and enactments, in accordance with this chapter. As used in this chapter, "agency shop" means an arrangement that requires an employee, as a condition of continued employment, either to join the recognized employee organization or to pay the organization a service fee in an amount not to exceed the standard initiation fee, periodic dues, and general assessments of the organization."  Cal. Gov't Code § 3502.5(a).

_____ : _____

Initials of Preparer      PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02465-SVW-AJW | Date | September 28, 2015 |
|---|---|---|---|
| Title | *April Bain et al v. California Teachers Association et al* | | |

---

[4] "Notwithstanding any other provision of law, upon receiving notice from the exclusive representative of a public school employee who is in a unit for which an exclusive representative has been selected pursuant to this chapter, the employer shall deduct the amount of the fair share service fee authorized by this section from the wages and salary of the employee and pay that amount to the employee organization. Thereafter, the employee shall, as a condition of continued employment, be required either to join the recognized employee organization or pay the fair share service fee. The amount of the fee shall not exceed the dues that are payable by members of the employee organization, and shall cover the cost of negotiation, contract administration, and other activities of the employee organization that are germane to its functions as the exclusive bargaining representative. Agency fee payers shall have the right, pursuant to regulations adopted by the Public Employment Relations Board, to receive a rebate or fee reduction upon request, of that portion of their fee that is not devoted to the cost of negotiations, contract administration, and other activities of the employee organization that are germane to its function as the exclusive bargaining representative." Cal. Gov't Code § 3546(a).

[5] Plaintiffs attached three collective bargaining agreements to their FAC. The excerpt from the agreement between the Los Angeles Unified School District and United Teachers Los Angeles provides:

    4.0 <u>Agency Fee/Dues Obligation</u>: Commencing within thirty (30) days of employees initial employment, throughout the term of this Agreement, each employee (as defined in Article I of this Agreement) is required as a condition of continued employment either: (a) to be a member in good standing of UTLA, or (b) to satisfy the agency fee financial obligations set forth in Section 4.1 below, unless qualified for religious exemption as set forth in Section 4.2 below. Newly hired bargaining members shall have deductions for dues or agency fee made on the first warrant received from the District. If this warrant covers several pay periods a deduction shall be made for each pay period.

    4.1 Unless the employee has (a) voluntarily submitted to the District an effective dues deduction request, or (b) individually made direct financial arrangements satisfactory to UTLA as evidenced by notice of same by UTLA to the District, or (c) qualified for exemption based upon religious grounds as provided in Section 4.2 below, the District shall process a mandatory agency fee payroll deduction in the appropriate amount, and forward that amount to UTLA. The amount of agency fee to be charged shall be determined by UTLA, subject to applicable law; it shall therefore be an amount not to exceed the normal periodic membership dues, initiation fee and general assessments applicable to UTLA members. As to non-members who object to UTLA spending their agency fees on matters unrelated to collective bargaining and contract administration, the amount of agency fee charged shall not reflect expenditures which the courts or PERB have determined to be non-chargeable, including political contributions to candidates and parties, members-only benefits, charitable contributions and ideological expenditures and, to the extent provided by law, shall not reflect expenditures for certain aspects of lobbying, ballot measures, publications, organizing and litigation. UTLA shall comply with applicable law regarding disclosure and allocation of its expenses, notice to employees of their right to object, provision for agency fee payers to challenge UTLA's determinations of amounts chargeable to the objecting non-members, and appropriate escrow provisions to hold contested amounts while the challenges are underway. The foregoing description of permissible agency fee charges and related procedures is included herein for informational purposes as a statement of applicable law, and is not intended to change applicable law or to provide any contractual terms or enforcement procedures under this

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02465-SVW-AJW | Date | September 28, 2015 |
|---|---|---|---|
| Title | *April Bain et al v. California Teachers Association et al* | | |

Agreement. The District will promptly remit to UTLA all monies deducted, accompanied by a list of employees for whom such deductions have been made.

(Dkt. 69-2.) The agreement between the West Contra Costa Unified School District and the United Teachers of Richmond provides:

**Section 1.** Any teacher who is a member of the United Teachers of Richmond, CTA/NEA, or who has applied for membership, may sign and deliver to the District an assignment authorizing deduction of unified membership dues, initiation fees and general assessments in the Union. Such authorization shall continue in effect for the duration of the Agreement. Pursuant to such authorization, the District shall deduct one-eleventh (1/11th), or one-twelfth (1/12th), depending upon the number of paychecks received.

**Section 2.** Any teacher who is not a member of the United Teachers of Richmond, CTA/NEA or who does not make application for membership within thirty (30) days from the date of commencement of teaching duties, shall immediately become a member of the Union or pay to the Union a fee in an amount equal to unified membership dues, initiation fees and general assessment, payable to the Union; provided, however, that the teacher may authorize payroll deduction for such fee in the same manner as provided in Section 1 of this Article. In the event that a teacher shall not pay such fee directly to the Union or authorize payment through payroll deduction as provided in Section 1, the District shall automatically deduct such service fees as authorized by Education Code, Section 45061.

(Dkt. 69-3.) Finally, the agreement between the Arcadia Unified School District and the Arcadia Teachers Association states:

17.1 <u>Members of the Association</u>
Any member of the bargaining unit who is a member of the Arcadia Teachers Association, or who has applied for Association membership may sign and deliver to the District an assignment form authorizing deduction of union membership dues and initiation fees.
    17.1.1 Such authorization for payroll deductions for payment of membership dues shall continue in effect until revoked in writing by the employee between June 1 and September 1 for the following year.
17.2 <u>Agency Fee Payers</u> Any unit member who is not a member of the Association or who does not make an application for membership within thirty (30) days from the date of commencement of duties, shall become a member of the Association or pay to the Association a representation fee in an amount allowed by Government Code 3546 not to exceed the Association's initiation fee and periodic dues; provided, however, that the unit member may authorize payroll deduction for such fee in the same manner as provided in Section 17.1, above.
    17.2.1 For unit members who have not executed voluntary written authorizations, the District shall reduce the salary warrant. for the payment of service fees to the Association.

                                                                                                :

Initials of Preparer      PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02465-SVW-AJW | Date | September 28, 2015 |
|---|---|---|---|
| Title | *April Bain et al v. California Teachers Association et al* | | |

(Dkt. 69-3.)

[6] The Supreme Court has established a two-part test to determine whether a plaintiff states a § 1983 claim against a private actor. "[T]he first question is whether the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority. The second question is whether, under the facts of this case, respondents, who are private parties, may be appropriately characterized as 'state actors.'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982).

[7] Although there is some confusion in the cases, it appears that the governmental nexus test largely overlaps with the pervasive entwinement test. *Compare Lee v. Katz*, 276 F.3d 550, 554 (9th Cir. 2002) (noting that a governmental nexus must be found in all cases, regardless of the test); *with Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002) (stating that the Supreme Court has articulated four tests, including the governmental nexus test).

[8] There can be little doubt that a public-sector union can constitutionally require a service fee from nonmembers for its collective bargaining activities that benefit all employees. *See Abood*, 431 U.S. at 244 (Steven, J., concurring).

[9] This conclusion is only made clearer by the lower court decisions cited by Plaintiffs where state action was based on statutory authorization of private conduct. In *Beck v. Communications Workers of America*, 776 F.2d 1187 (4th Cir. 1985), the Fourth Circuit rested its state action determination largely on the finding that the authorizing statute in question was nearly identical to the Railway Labor Act at issue in *Hanson* and *Street*. 776 F.2d at 1198-99; *see also Smith v. United Transp. Union Local No. 81*, 594 F. Supp. 96, 99 (S.D. Cal. 1984) ("The state action in the instant case is the law, implemented by the Union and the Transit District, which allows the Union to operate an agency shop and thus compel non-members to finance Union political expression."); *Ellis v. W. Airlines, Inc.*, 652 F. Supp. 938, 938 (S.D. Cal. 1986) (nonmember dues collected pursuant to the Railway Labor Act). The cases cited by the Plaintiffs in the Northern District of California do not add anything to their argument. *Farrell v. Int'l Ass'n of Firefighters, AFL-CIO, Local 55*, 781 F. Supp. 647, 648 (N.D. Cal. 1992) (remarking that if a collective bargaining agreement between a city and a union compelled political or ideological contributions from all employees as a condition of employment it would violate First Amendment rights); *Liegmann v. California Teachers Ass'n*, 395 F. Supp. 2d 922, 927-28 (N.D. Cal. 2005) (discussing likelihood of success on the merits for temporary restraining order analysis).

[10] Recent Supreme Court decisions do not change this conclusion. In *Knox v. Serv. Employees Int'l Union, Local 1000*, 132 S. Ct. 2277 (2012), the Court simply recognized that existing case law holds that agency shop agreements impinge on the First Amendment interests of nonmembers. *Id.* at 2284. Likewise, in *Harris v. Quinn*, 134 S. Ct. 2618 (2014), the Court found state action in the context of enforcement of a fair-share provision of an Illinois law against people who were not members of the union. *Id.* at 2626.

[11] If union membership only conferred the right to vote for the design of the union's softball team uniforms, for example, Plaintiffs would be hard pressed to argue that they were coerced into relinquishing their First Amendment rights.

[12] Because satisfaction of one state action test can be sufficient the Court only analyzes the complained of conduct under Plaintiffs' strongest theory, the joint action test.

[13] At the hearing, counsel for Plaintiffs submitted that they alleged only "collaboration" between unions and government officials. Counsel explained that there was an inference of conspiracy but conceded that Plaintiffs did not specifically allege a conspiracy.

[14] Though the Court is not convinced that any difference in state action requirements under California law would result in a different conclusion, the Court declines to reach Plaintiffs' California Constitution claim.

_____ : _____
Initials of Preparer
PMC